```
                                        ┌─────────────────────────────┐
                                        │ USDC SDNY                   │
                                        │ DOCUMENT                    │
                                        │ ELECTRONICALLY FILED        │
UNITED STATES DISTRICT COURT            │ DOC #: _____        │
SOUTHERN DISTRICT OF NEW YORK           │ DATE FILED:   9/24/14       │
--------------------------------------X └─────────────────────────────┘
YOLANDA N. TEJADA,                      :

                    Plaintiff,          :     OPINION AND
                                        :     ORDER
                                        :
        -against-                       :     14-CV-841 (JLC)
                                        :
                                        :
CAROLYN W. COLVIN,                      :
Acting Commissioner of Social Security, :
                                        :
                    Defendant.          :
--------------------------------------X
```

**JAMES L. COTT, United States Magistrate Judge.**

*Pro se* plaintiff Yolanda Tejada seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for a waiver of overpayment of Supplemental Security Income ("SSI") benefits. The Commissioner has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the motion is granted.

## I. BACKGROUND

Tejada was found eligible for SSI benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, and received SSI payments until May 1, 2011. Administrative Record ("R.") (Dkt. No. 19), at 16, 47.[1] On August 2, 2011, the Social Security Administration ("SSA") issued a notice informing Tejada that she had been overpaid SSI benefits in the amount of $6,970.00 between August 1, 2010 and May 1, 2011. *Id.* at 16, 47, 106. The stated reason for the overpayment was that, in June 2010, Tejada's husband moved back into her household and

---

[1]     The Administrative Record consists of one docket entry with five attached supplemental documents. For clarity and consistency, citations to the record will refer to the pagination which runs sequentially throughout the various entries and is marked in bold in the upper right-hand corner.

he had been receiving monthly income of $952.00[2] in Social Security disability benefits and $1,138.00 in long-term disability benefits.[3] *Id.* at 16, 25, 48. Based on these circumstances, the SSA found that Tejada had excess household income, rendering her ineligible for SSI benefits. *Id.* at 16, 44.

On November 4, 2011, Tejada requested a waiver of the overpayment, claiming that she was not at fault in causing the overpayment because she "was under the impression [her] husband Francisco Tejada Rivas reported to SSA he was living at [her] household. He reported a change of address on 06/2010." *Id.* at 21-22, 47. Tejada also listed and provided supporting documentation for her monthly household expenses, which included: $577 for rent; $800 for food; $347.52 for utilities (electric, telephone, and cable television); and $80 for laundry detergent. *Id.* at 26-35.

On November 21, 2011, the SSA denied Tejada's waiver request on the grounds that she was able to repay the overpayment and was at fault for not self-reporting her husband's addition to her household. *Id.* at 16, 47-50. Tejada filed a request for reconsideration on December 22, 2011, stating that she was "not aware that [she] needed to report when [her] husband returned to the house." *Id.* at 16, 51-53. Her reconsideration request was denied on the same date. *Id.* at 54-56. Tejada requested a hearing on January 19, 2012, stating that she was "not able to pay [her] overpayment because [her] husband's income is not sufficient to pay all [their] household expenses and his medical expenses." *Id.* at 57. On April 10, 2012, Tejada appeared without

---

[2]     Tejada's husband's Social Security benefit was listed elsewhere in the record as $1068 or "$980-something," *see id.* at 48, 128; however, the ALJ's decision only cited the $952 that Tejada reported in her November 2011 application for waiver of the overpayment, *id.* at 16, 25. Accordingly, the Court will refer only to this lower figure.

[3]     In September 2011, the long-term disability benefits were adjusted for a cost of living increase from $1,138.10 to $1,229.26. *Id.* at 19, 50.

2

counsel before Administrative Law Judge ("ALJ") Patrick Kilgannon and testified with the
assistance of a Spanish interpreter. *Id.* at 120-32. Tejada testified that her current monthly
expenses included: $602 for rent; approximately $300 for electricity and cable television; and
$900 to $1,000 for food and laundry detergent. *Id.* at 131. She further testified that her 25-year-
old son resides with her and receives approximately $500 per month in Social Security benefits
(on account of his schizophrenia and bipolar diagnoses), $200 of which her husband typically
retained toward household expenses. *Id.* at 126, 131. Tejada explained that her husband has
cancer but provided no documentation of his or any other household member's medical
expenses. *Id.* at 130. Tejada stated that as a result of her husband's reinstatement to her
household, she had lost all of her benefits, including Medicaid. *Id.* at 131.

In a decision issued on April 20, 2012, the ALJ found that Tejada was overpaid $6,970 in
SSI benefits during the period August 1, 2010 to February 1, 2011. *Id.* at 18.[4] The ALJ further
found that Tejada was not at fault in causing the overpayment but denied waiver of recovery on
the grounds that recovery of the overpayment would not defeat the purpose of Title XVI, would
not be against equity and good conscience, nor would it impede efficient or effective
administration of Title XVI. *Id.* at 18-19. Based on Tejada's current financial circumstances,
the ALJ recommended that she repay $100 each month to satisfy the debt. *Id.* at 20.

Tejada then sought review of the ALJ's decision by the SSA Appeals Council on May 17,
2012, *id.* at 7, which was denied on December 20, 2013, making the ALJ's decision the final
determination of the Commissioner, *id.* at 2.

On February 6, 2014, Tejada, again proceeding *pro se*, commenced this action by timely

---

[4]     The Court assumes that the ALJ intended to identify May 1, 2011 as the end date for the
overpayment period here as he does elsewhere in his decision. *See id.* at 16. Other documents in
the administrative record confirm that May 1, 2011 is the correct date. *See, e.g.*, *id.* at 21, 47.

filing a form complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and/or 1383(b)(1)(B).  (Dkt. No. 2).  Tejada submitted additional evidence with her complaint, including a January 14, 2014 SSA billing statement for the $6,970 outstanding balance (Dkt. No. 2 at 17-24), and an outpatient department ("OPD") "Management Care Plan," listing tests performed and medications prescribed to her by Dr. Maria T. Espejo in 2013 (*id.* at 25).  Tejada was granted *in forma pauperis* status on February 27, 2014.  (Dkt. No. 3).  On June 10, 2014, the Commissioner filed her answer (Dkt. No. 13), and moved for judgment on the pleadings pursuant to Rule 12(c), *see* Motion for Judgment on the Pleadings (Dkt. No. 14); Memorandum of Law in Support of Judgment on the Pleadings (Dkt. No. 15).

On June 9, 2014, Tejada submitted an application for the appointment of *pro bono* counsel.  (Dkt. No. 12).  While not formally granting the motion, the Court sought counsel for Tejada, but was unsuccessful in securing representation for her.  (Dkt. No. 17).  The Court gave Tejada additional time to submit a cross-motion, but advised her that if the Court remained unable to appoint *pro bono* counsel for her, she must nonetheless submit her response to the Commissioner's motion.  (*Id.*)  Despite this warning, Tejada has not filed any papers in opposition to the motion.[5]

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Statutory and Regulatory Scheme for Overpayment of SSI Benefits

If an individual receiving SSI benefits is incorrectly paid more than the amount to which she is entitled, the Commissioner is authorized to seek a refund of the excess amount of benefits.

---

[5]      The Honorable J. Paul Oetken, the district judge to whom this case was originally assigned, referred this case to me for all purposes in accordance with 28 U.S.C. § 636(c) on June 10, 2014, following the parties' consent to my jurisdiction.  (Dkt. Nos. 8, 11, 16).

4

42 U.S.C. § 1383(b)(1); 20 C.F.R. § 416.537. When an individual seeks a waiver of the repayment, the analysis proceeds under a two-step inquiry. The requirement to repay can be waived only if: (1) the recipient was without fault; and (2) recovery of the overpayment would either: (a) defeat the purpose of Title XVI; (b) be against equity and good conscience; or (c) impede efficient or effective administration of Title XVI due to the small amount involved. 42 U.S.C. § 1383(b)(1)(B); 20 C.F.R. § 416.550; *see also Mesias v. Doe*, No. 11-CV-2373 (RRM), 2012 WL 3704824, at \*3 (E.D.N.Y. Aug. 24, 2012). The burden is on the plaintiff to satisfy both prongs of the test. *See, e.g.*, *Valente v. Sec'y of Health & Human Svcs.*, 733 F.2d 1037, 1042 (2d Cir. 1984); *Posnack v. Sec'y of Health & Human Svcs.*, 631 F. Supp. 1012, 1015 (E.D.N.Y. 1986). Here, the ALJ determined that Tejada was not at fault in causing the overpayment.[6] Accordingly, the only issues presented in this case are whether recovery would defeat the purpose of Title XVI; be against equity or good conscience; or impede the effective administration of Title XVI.

Generally, recovery of an overpayment will defeat the purpose of the SSI program if it will deprive the person of income required for ordinary and necessary living expenses. 20 C.F.R. § 416.553 (referring to criteria for qualifying expenses described in 20 C.F.R. § 404.508). "This depends upon whether the person has an income or financial resources

---

[6]     The SSA initially found that Tejada was at fault in causing the overpayment because "she was aware of her rights and her reporting responsibilities" and was on notice from "two previous redeterminations on 01/2002 and 06/2002." R. at 47. The ALJ ultimately concluded, however, that at the hearing Tejada "credibly explained that this information did not stay with her because of all the other situations she was required to deal with, including her own health and her disabled son's health." *Id.* at 18. Moreover, the ALJ found that she believed, albeit mistakenly, that she had effectively complied with her reporting requirements when her husband, upon moving into her house, went to the Social Security office with her paperwork to report their changed circumstances. On this basis as well, the ALJ concluded that Tejada was without fault in causing the overpayment. *Id.*

sufficient for more than ordinary and necessary needs, or is dependent upon all of [her] current benefits for such needs." 20 C.F.R. § 404.508(a). Ordinary and necessary living expenses include: (1) fixed living expenses such as food and clothing, rent, and utilities; (2) medical, hospitalization, and other similar expenses; (3) expenses required to support legal dependents; and (4) "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living." *Id.*

Recovery of an overpayment will be against equity or good conscience "if an individual changed his or her position for the worse or relinquished a valuable right" because of reliance on the incorrect payment. 20 C.F.R. § 416.554 (providing, among other examples, an individual, who, upon being notified of eligibility for SSI benefits, signed a lease for a more expensive apartment than he had previously been renting); *see also Polemis v. Heckler*, No. 84-CV-2804 (WK), 1986 WL 83405, at *6 (S.D.N.Y. June 13, 1986) (recovery inequitable when plaintiff had enrolled daughter in private school in reliance on receipt of overpayments). The issue as to whether recovery of an overpayment is against equity or good conscience does not take the plaintiff's financial resources into account. *Adams v. Astrue*, No 11-CV-00289 (JFB), 2012 WL 768211, at *5 (E.D.N.Y. Mar. 9, 2012) (citing comparable regulation governing Title II of the Act).

It is not enough to show that the plaintiff has spent the overpaid benefits in the good faith belief that she was entitled to them. *Posnack*, 631 F. Supp. at 1016. To meet the standard, the plaintiff must establish that she spent the money in a way in which she would not have but for the receipt of the overpayments, such as incurring a debt or making substantial purchases she otherwise would not have made in reliance on the overpayment. *Id.*; *Gallagher v. Astrue*, No.

6

11-CV-159 (MAT), 2013 WL 2528176, at *7 (W.D.N.Y. June 10, 2013); *Beekman v. Bowen*, No. 88-CV-7661 (KTD), 1989 WL 280333, at *3 (S.D.N.Y. Dec. 13, 1989).

Recovery of an overpayment would impede efficient or effective administration of Title XVI when the individual seeking waiver is not at fault and the amount at issue is smaller than the average administrative cost of recovery in such a case. 20 C.F.R. § 416.555. Here too, the overpaid individual's financial circumstances are not considered. *Id.*

## 2.  Judicial Review of the Commissioner's Determination

A district court must uphold the Commissioner's final determination as to a claimant's request for waiver of overpayment if it is supported by substantial evidence and not an abuse of discretion. *See, e.g.*, *Valente*, 733 F.2d at 1041. First, because the determination as to fault is factual in nature, the district court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Id.*; *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Second, "the issues of whether repayment would defeat the purpose[] of the Act or be against equity or good conscience implicate an exercise of informed judgment, and the [Commissioner] has considerable discretion in making these determinations." *Valente*, 733 F.2d at 1041. Factual findings made by the Commissioner in determining these issues must be upheld if supported by substantial evidence. *Id.*

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U. S. 389, 401 (1971)) (internal quotation marks and alterations omitted). The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).

7

The reviewing court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, the reviewing court must defer to the Commissioner's resolution of conflicting evidence. *Langella v. Bush*, 161 F. App'x 140, 141 (2d Cir. 2005); *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Moreover, "once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (emphasis omitted) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for, and a court may grant, judgment on the pleadings "where the material facts are undisputed and where a party is entitled to judgment as a matter of law based upon the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). Courts consider such a motion brought under the Social Security Act on the basis of both the pleadings and a "certified copy of the transcript of the [administrative] record including the evidence upon which the findings and decision complained of are based." *See* 42 U.S.C. § 405(g).

"[A] failure to respond to a 12(c) motion cannot constitute 'default' justifying dismissal of the complaint" if the pleadings are otherwise "sufficient to withstand dismissal." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) (quoting *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983)). In other words, even where a motion for judgment on the pleadings is unopposed, such as here, the district court "must review the record and determine whether the moving party has established its entitlement to judgment as a matter of law." *Lynn v. Comm'r of Soc. Sec.*, 11-

CV-917 (CBA), 2013 WL 1334030, at *10 (E.D.N.Y. Mar. 30, 2013) (citing *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)). Furthermore, where the party against whom judgment is sought proceeds *pro se*, the unrepresented party's pleadings should be construed liberally and to raise the strongest arguments they suggest. *See, e.g.*, *Litvin v. Astrue*, 09-CV-8649 (JSR) (HBP), 2011 WL 4834138, at *7 n.10 (S.D.N.Y. Oct. 12, 2011) (citation omitted), Report and Recommendation *adopted by* 2011 WL 6780916 (S.D.N.Y. Dec. 23, 2011).

## B. The ALJ's Decision

In his decision dated April 20, 2012, ALJ Kilgannon determined that, although Tejada was not at fault in causing the overpayment of $6,790, she nevertheless did not meet the other requirements for a waiver of recovery of the overpayment. R. at 18-20. The ALJ found that recovery of the $6,970 would not defeat the purpose of Title XVI because the monthly income of Tejada's household (even without her monthly SSI payments, which had ceased in May 2011) exceeded her reported monthly expenses and was therefore sufficient to meet her ordinary and necessary needs. *Id.* at 19. Next, the ALJ concluded that recovery of the overpayment would not be against equity or good conscience because there was no evidence that Tejada "changed her position for the worse or gave up a valuable right in reliance on the SSI benefits that she was receiving after her husband moved back into the household but before the overpayment was assessed." *Id.* Finally, the ALJ determined that recovery of the overpayment would not impede efficient or effective administration of the Act because the amount of Tejada's overpayment was not $1,000 or less. *Id.* Accordingly, the ALJ denied Tejada's waiver request and found her liable for the $6,790 overpayment, recommending that she be directed to repay the debt in $100 monthly installments in light of her overall financial circumstances.

9

## C. Analysis

Although Tejada has not opposed the motion, the Court liberally construes her complaint to raise the strongest arguments it suggests, specifically that the ALJ's determination was not sufficiently supported by the evidence or involved an abuse of discretion. Upon review of the record, however, the Court finds that the ALJ did not commit error and that his determination should be affirmed.

### 1. Recovery Does Not Defeat the Purpose of Title XVI

Having initially found Tejada to be without fault in causing the $6,790 overpayment, the ALJ then properly considered whether Tejada qualified for waiver of recovery under any one of the three bases set out in 42 U.S.C. § 1383(b)(1)(B) and its corresponding regulations. On the issue as to whether recovery of the overpayment would defeat the purpose of Title XVI, the ALJ reviewed all of the evidence Tejada offered about her financial circumstances. Though Tejada did not receive any monthly income herself, the ALJ properly considered the monthly benefits of other members of her household, namely her husband and son, to comprise part of her financial resources within the meaning of the Act. *See Posnack*, 631 F. Supp. at 1015 (question as to whether repayment would defeat the Act's purpose requires consideration of plaintiff's overall financial condition, not just monthly income and expenses).

The ALJ listed Tejada's sources of monthly income, including her husband's Social Security Disability and long-term disability benefits, which were "in excess of 2,100 per month" ($1,229 in long-term disability and $952 in Social Security Disability), and her son's $500 monthly disability benefit payment, "of which $200 is given over to household expenses." R. at 19. Thus, the ALJ found Tejada's monthly income to be in excess of $2,300 per month (although he never cited to this precise amount).

10

The ALJ then proceeded to itemize Tejada's reported monthly expenses, which she testified at the hearing were: $602 in rent; $900 to $1,000 for food and laundry detergent; $300 for electricity; and approximately $180 to $188 for cable television. *Id.* at 131. In his decision, the ALJ noted that Tejada's waiver request form listed her total utilities bills to be $347.52 per month, including electricity, phone, and cable television. He further observed that the monthly cable television bill seemed to be a "luxury expense." *Id.* at 19. Leaving aside the question as to whether cable television qualifies as a "miscellaneous expense which may reasonably be considered as part of [Tejada's] standard of living," 20 C.F.R. § 404.508(a)(4), the Court concludes that Tejada's maximum monthly expenses all told add up to $2,090, which is still less than her household's monthly income (albeit by a small margin). *Cf. Marchese v. Sec'y of Health & Human Svcs.*, 690 F. Supp. 162, 166 (W.D.N.Y. 1988) (remanding to determine whether recovery would defeat the Act's purpose where record indicated plaintiff's expenses exceeded his monthly income). Accordingly, the ALJ's determination that Tejada had household income "sufficient for more than ordinary and necessary needs" is supported by substantial evidence. Based on the available evidence, the ALJ did not abuse his discretion in finding that recovery of the overpayment would not defeat the purpose of Title XVI.

## 2. Recovery Is Not Against Equity and Good Conscience

The plaintiff has the burden of showing a change in position for the worse in order to demonstrate that recovery would be against equity and good conscience. *Valente*, 733 F.2d at 1042; *Posnack*, 631 F. Supp. at 1016. There is no evidence in the record that Tejada has incurred debt or made substantial purchases she otherwise would not have made in reliance on the overpayment. Nor is there any evidence that she relinquished a valuable right in such reliance. *See, e.g., Beekman*, 1989 WL 280333, at *3; *Posnack*, 631 F. Supp. at 1016. "The fact that

11

recovery of the overpayment may cause the plaintiff some financial hardship is not enough to make the recovery inequitable under the regulation." *Posnack*, 631 F. Supp. at 1016. Nonetheless, given Tejada's limited financial resources, the ALJ properly recommended that she be directed to repay the overpayment in $100 monthly installments as opposed to in one lump sum.

### 3. Recovery Does Not Impede Efficient or Effective Administration of Title XVI

As to the third basis for waiver of recovery, the regulations do not specify what amount of money would be so small that recovery of the overpayment would impede efficient or effective administration of Title XVI. *See* 20 C.F.R. § 416.555. The Commissioner is in the best position to determine whether the amount at issue is small enough that expending costs to recover it would impede administration of the SSI program. As the amount at issue here is well over $1,000, the ALJ did not abuse his discretion in concluding that recovery would not impede efficient or effective administration of Title XVI.

### D. Newly-Submitted Evidence Does Not Warrant A Remand

Tejada submitted additional evidence beyond the administrative record for the Court to review in the form of: (1) a January 14, 2014 SSA billing statement for the $6,970 outstanding balance; and (2) an OPD Management Care Plan, listing tests performed and medications prescribed to her by Dr. Maria T. Espejo in 2013, both appended to her complaint. (Dkt. No. 2 at 17-24, 25). As a matter of law, however, evidence from outside the administrative record may not be considered on judicial review of the Commissioner's findings. 42 U.S.C. § 405(g) ("The court shall have the power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security[.]") (emphasis added); *see also, e.g., Gonzalez v. Astrue*, No. 10-CV-3667 (DAB) (JLC), 2011 WL

4024707, at *11 (S.D.N.Y. Sept. 12, 2011), Report and Recommendation, *adopted by* 2012 WL

3835522 (S.D.N.Y. Sept. 4, 2012).

Courts may instruct the Commissioner, however, to consider such evidence on remand,

where it is: new and not repetitive of what is in the existing record; material in the sense of being

both probative and relevant to the time period during which benefits were denied (or, as here,

overpaid); and where there is good cause for the failure to include it in an earlier proceeding.

*Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (quoting *Tirado v. Bowen*, 848 F.2d 595, 597

(2d Cir. 1988)).  Materiality requires that there be a reasonable possibility that the "new evidence

would have influenced the [Commissioner] to decide [the] application differently." *Id.*

Here, the new evidence Tejada seeks to introduce does not merit remand.  The SSA

billing statement is repetitive of the central fact at issue, which is well-documented in the

existing record.  The OPD Management Care Plan is neither probative nor relevant.  For one

thing, the 2013 medical treatments post-date the relevant time period under consideration.

Moreover, the document contains no information concerning expenses related to treatment, and

therefore has no bearing on the issues in this case, which relate to overpayment of benefits rather

than a denial of benefits.  Accordingly, there is no basis for the Court to remand Tejada's case to

the Commissioner for consideration of the newly-submitted evidence.[7]

---

[7]     To the extent that Tejada is trying to make out a new claim for disability benefits, this Court is not the correct forum in which to do so.  If Tejada has reason to believe she is now entitled to benefits because her circumstances have changed, she should submit a new application or seek assistance from a social services agency.

## III.  CONCLUSION

Because the Commissioner's determination that Tejada did not qualify for waiver of the

overpayment is supported by substantial evidence in the record, her motion for judgment on the

pleadings is granted, and the case is dismissed.

The Clerk is directed to enter judgment for the Commissioner and to close the motions at

docket numbers 12 and 14.

**SO ORDERED.**

Dated: New York, New York
      September 24, 2014

JAMES L. COTT
United States Magistrate Judge

**A copy of this Opinion and Order has been mailed to:**

Yolanda Tejada
1064 Teller Avenue
Apartment #4F
Bronx, NY 10456